CITY OF JOPLIN, Appellant, v. LOUIS JACOBS,
Respondent.

Kansas City Court of Appeals, June 18, 1906.

1. **DRAMSHOPS: Tippling Houses: Statute: Third Class Cities.**
The Missouri statute designates a licensed place for the sale
of liquors as a dramshop. Cities of the third class cannot sup-
press them but may suppress tippling houses which are unli-
censed places.

2. ——: ——: ——: ——: **Ordinance.** An ordinance to
suppress winerooms is held not to intend a regulation of dram-
shops but to prohibit sales to women.

3. ——: ——: ——: ——: ——. Such ordinance is
not authorized by the general laws of the state since it does not
prohibit the sale of liquor to women by dramshop-keepers nor
is it authorized by the charters of cities of the third class.
Cases distinguished.

Appeal from Jasper Circuit Court.—*Hon. Howard Gray,*
Judge.

AFFIRMED.

*Geo. J. Grayston,* City Counselor, for appellant.

(1)   The statute governing cities of the third class
expressly gives such cities the power to levy and collect
a license tax on dramshops and saloons and to "License,
tax, regulate or suppress . . . tippling houses." R. S.
1899, sec. 5857.   (2)   This ordinance was copied literal-
ly from the Denver wineroom ordinance sustained by
the Supreme Court of the United States in Cronin v.
Adams, 192 U. S. 108, 48 Law Ed. 365. See also Cronin
v. Denver, 192 U. S. 116, 48 Law Ed. 368.   (3)   There
can be no actual difference between dramshops, saloons
and tippling houses under our statutes. State ex rel.
v. County Court, 128 Mo. 437; Kitson v. Ann Arbor, 26
Mich. 325; State v. Mansker, 36 Tex. 364; Goozen v.
Phillips, 49 Mich. 7.

*F. M. Cummings* for respondent.

(1) The word "dramshop" as used in charter of third class cities has a well-defined meaning, and it is used as defined in sec. 2990, Revised Statutes 1899. The word means a place conducted under the provisions of article 1, chapter 22, R. S. 1899. And the city council cannot give the word any other meaning. Trenton v. Clayton, 50 Mo. App. 535. (2) Cities of the fourth class are given by express terms the power to regulate dramshops, and yet this court held that under this power the city could not regulate as it saw fit but only within the provisions of the state law in relation to dramshops. State ex rel. v. McCammon, 86 S. W. 510. (3) The city charter expressly provides that the city shall have the power to prohibit the sale to "minors and to drunkards," but it is silent as to females. R. S. 1899, sec. 5835. The city cannot claim any right by right of its "General Welfare Clause." State v. Butler, 178 Mo. 272. (5) The fact that the Joplin ordinance was drafted in accordance with the Denver ordinance which was supported by the decision of the United States Supreme Court lends no weight to the Joplin ordinance for the reason that Denver had exclusive power over such matters and Joplin has not. Crown v. City of Denver, 192 U. S. 368; Colorado Session Laws, 1891, p. 315. (6) The State of Missouri has never gone so far, although they have placed every other restriction that can be conceived against the operation of dramshops, which are as follows: R. S. 1899, secs. 2331, 3009, 3011, 3017, 3018, 10503. Penalty for "Employing females in a dramshop." R. S. 1899, sec. 2185.

ELLISON, J.—The defendant is a licensed dramshop keeper in the city of Joplin. He was charged with violating an ordinance of such city "in relation to winerooms," by having connected with, or as a part of his dramshop, a "wineroom" where female persons were al-

lowed to enter for the purpose of being supplied with intoxicating liquor and where they were so supplied. There was a demurrer to the complaint and it was sustained by the circuit court. The city appealed.

Much of the argument in this cause has been directed to an ascertainment of the meaning of the word "tippling house," as distinguished from that of "dramshop." The cause of such contention is that the charter of cities of the third class, to which Joplin belongs, empowers such cities to suppress tippling houses and, while providing for licensing dramshops, does not grant authority to suppress them. The city's theory is that a dramshop and a tippling house are one and the same thing, and that authority to suppress a tippling house embraces authority to prevent a sale of liquor to women by a dramshop keeper.

In some jurisdictions there is a distinction made between a dramshop and a tippling house; in others, no distinction is recognized. Both are places where intoxicating liquors may be purchased at retail. To tipple, is to drink intoxicating liquors and to take a dram is the same thing. Whether there is, in reality, any substantial difference between a dramshop and a tippling shop, we need not inquire, for the reason that in a legislative sense, there is a recognized difference and distinction made between them in this State. Our Legislature has designated a licensed place for the sale of intoxicating liquors as a dramshop, and to be a dramshop, as known to the law, it must be licensed. [Sec. 2990, R. S. 1899.] The charter of cities of the third class does not authorize the suppression of the dramshop, known as such by the general law. The defendant, as already stated, is a licensed dramshop keeper and so long as he does not violate the general law, or any valid ordinance, his dramshop cannot be suppressed by the city. On the other hand, there is no provision for licensing a tippling house in cities of the third class and such house is therefore an

unlicensed place, and power to suppress it is expressly granted.

The defendant is charged, as a dramshop keeper, with the violation of an · ordinance which forbids the keeping of a room where intoxicating liquors are sold to women who may enter such room. It is evident from the face of the ordinance that it is not intended merely as a regulation of a dramshop, of a character like those which provide that there shall not be side doors, or closed doors, or window shades, or screens. Nor was it intended merely to prevent separate rooms for women, or women and men. So it is likewise clear that it was not intended to merely regulate the dramshop as to any particular class of women to whom liquor must not be sold, for it prohibits a sale to *any* of the female sex. It was clearly intended to prohibit the sale of intoxicating liquor to female persons; for it makes it unlawful for the dramshop keeper to allow any such person to come into his dramshop to obtain liquor. It is an absolute prohibition against the sale of intoxicating liquor to women.

The question is, is such an ordinance authorized by the general state law as to dramshops? It is easily answered, no. The general state law has a large variety of provisions made in the regulation of dramshops. Thus, the keeper of such shop cannot sell to minors, nor to habitual drunkards, nor to Indians or intoxicated persons, nor to students. Nor can he keep musical instruments. Nor can he allow sparring, boxing, billiards, pool, cards or dice. Nor can he employ females in such · shop. But nowhere is it said that he cannot sell to a woman merely because she is a woman.

But, nothwithstanding the ordinance is not authorized by the general state law, if authorized by the charter for the city, it is valid. Ample authority on such an ordinance is found in the charter of some cities, as for instance, Kansas City. [Sec. 14, art. 3, page 32, Charter of Kansas City.] But no such authority appears in the

statutory charter of cities of the third class. A dramshop keeper's license, authorized by the charter in such cities, is obtained under the general law, and the dramshop keeper, during the life of his license (it not being revoked) would exercise whatever substantive right he has under the general law (State ex rel. v. McCammon, 111 Mo. App. 626), subject, of course, to reasonable municipal regulation, not inconsistent with the general law.

The ordinance in question is like one ordained by the city of Denver in Colorado, which was upheld by the Supreme Court of that State and, on appeal, by the Supreme Court of the United States. [Cronin v. Adams, 192 U. S. 108.] The dramshop keeper in that case claimed that the ordinance, in prohibiting the sale of liquors to women, took from him a right guaranteed by both the State and Federal constitutions. But in that case the power was exercised by the State of Colorado. The Legislature of that State granted to the city of Denver *exclusive power to prohibit* the sale of intoxicating liquors, while, as we have seen, the Legislature of this State has not exercised such power itself, nor has it delegated the power to cities of the third class. There is no doubt of the power of the State to annex to the license of a dramshop keeper a condition that he shall not sell to females. For there is no right to sell liquors; it is a privilege only, and it may be granted on conditions to be determined by the Legislature, or it may be withheld altogether. But so long as the Legislature neglects to prohibit the sale of liquor to women and neglects to authorize a municipality to do so, the latter's ordinance to that effect is invalid. Municipal corporations can only exercise such powers as are expressly granted by their charters, or those necessarily incident to, or implied in the powers expressly granted. [Nevada v. Eddy, 123 Mo. 557, 558.] If there be any ambiguity or

reasonable doubt as to the grant of a power, it is resolved against the municipality. [State v. Butler, 178 Mo. 311, 312; City of Corvallis v. Carlile, 10 Oregon 140, 141, 1 Dillon on Mun. Corp., p. 145.]

Our conclusion is that the trial court properly interpreted the law and the judgment will be affirmed. All concur.