**DRAPER et al. v. CITY OF ST. LOUIS et al.**
No. 7264(2).

United States District Court
E. D. Missouri, E. D.
July 17, 1950.

Henry D. Espy, S. R. Redmond, Robert L. Witherspoon, all of St. Louis, Mo., for plaintiffs.

James E. Crowe, City Counselor, and John P. McCammon, Associate City Counselor, of St. Louis, Mo., for defendants.

HULEN, District Judge.

Can the City of St. Louis refuse use of open-air swimming pools, built, maintained and operated by public funds, to its Negro citizens, solely because of their color or race, is the question presented by this record. Plaintiffs are Negroes who were refused use of open-air swimming pools. Individual defendants are officers of the City of St. Louis having control of its recreational facilities including swimming pools. Plaintiffs bring this suit as a class action, based on the Fourteenth Amendment to the Constitution and the Civil Rights statute, 8 U.S.C.A. § 41 et seq., seeking a declaratory judgment and injunctive relief. They also ask damages under the Civil Rights Act.

### Findings of Fact

Plaintiffs are citizens and taxpayers of the City of St. Louis and members of the Negro race. Individual defendants are the Mayor of St. Louis, the Director of Public Welfare, and the Commissioner of Parks and Recreation. Individual defendants were acting in their official capacities in respect to the matters complained of. The Commissioner of Parks and Recreation has direct control of all City parks and swimming pools under supervision of his superiors, the Director of Public Welfare and the Mayor. Defendant City has constructed, maintains and operates, at public expense, seven indoor and two outdoor swimming pools. A third outdoor pool is in course of construction with completion date August 1st, 1950. Two of the indoor pools are restricted to use by Negroes; two are open to all races. Negroes are barred from the remaining pools. The two outdoor pools are forbidden to Negroes. The two outdoor pools are located in public parks amidst attractive surroundings of trees and shrubbery, and have wading pool facilities (See plaintiffs' exhibits 2, 3, 4, 5, 6, 8).

The facilities are used generally by children of all ages up to sixteen years. Outdoor pools are "undoubtedly" preferable and more attractive in the summer than are indoor pools. The pool under construction is located near a public school in a community largely populated by Negroes, in a setting far less attractive than the present outdoor pools (See defendants' exhibits 3, 4, 5, 6, 7, 8). On completion it is the present plan of defendants to open this pool to use of Negroes. The ratio of population of St. Louis is one Negro citizen to five white citizens.

The bar against members of the Negro race to all outdoor pools follows a custom and finds no authority in ordinance, statute, or the Constitution of Missouri. Acting to break this custom defendants in June, 1949, opened all City operated pools to citizens regardless of race. This action resulted in peace disturbances of a racial nature, with the result the defendant Mayor issued an order closing all outdoor pools.

Defendant City has established by ordinance the "St. Louis Council of Human Relations". This council has set up a "paper" program to promote "education" of the public to accept use of City owned recreation facilities, including swimming pools, by all citizens regardless of race. By a divided vote the council recommended a continuation of the present practice of racial discrimination in use of the pools. Defendants are following the recommendation of the council.

Plaintiffs sought admission to one of the open-air swimming pools, owned and operated by the City, on June 19, 1950, and expressed a willingness to comply with all regulations for admission which were required of other citizens. Admission to and use of one of the outdoor swimming pools was then denied plaintiffs solely because they were members of the Negro race. Like treatment was and still is being accorded all members of plaintiffs' color and race who apply for admission to use the City outdoor swimming pools.

The Chief of Police of the City of St. Louis testified that if the outdoor swimming pools were open to all citizens regardless of race that the officers under his direction could preserve order.

## Conclusions of Law

### I.

■ Defendants attack the jurisdiction of the Court, declaring plaintiffs' remedy is one solely for adjudication in the State courts. The holding of the Eighth Circuit Court of Appeals is to the contrary. See Morris v. Williams, 149 F.2d 703.

Plaintiffs base their position on Snowden v. Hughes, 321 U.S. 1, 64 S.Ct. 397, 88 L. Ed. 497. In the Snowden case plaintiff was attempting to establish a right which he claimed he was deprived of by his election board in violation of a State statute. The basis of claimed Federal jurisdiction was denial of a civil right. In declining jurisdiction the Supreme Court held violation of a State statute per se does not confer Federal jurisdiction. A showing of violation of the Federal Constitution such as by discrimination must also appear. Plaintiff was not suffering from an action of the State. The charge was that the defendants were acting in violation of a State statute. In this case the City, an arm of the State, acting through its duly elected or appointed officials, is charged with depriving plaintiffs of their rights under the Federal Constitution and Federal law. No City ordinance, State statute, or State constitutional provision is involved. We find no case forbidding an aggrieved party access to a Federal tribunal under circumstances where custom is relied on as a defense to segregation resulting in denial of equal rights. See Morris v. Williams, supra.

### II.

By their pleading defendants admit: "City of St. Louis, defendants Darst, O'Toole and Baumes operate and maintain out of public funds derived from taxes levied by the City of St. Louis and at the public expense and with taxes paid by these plaintiffs and other citizens said outdoor swimming pools; that said defendants and their predecessors in office have for years denied, and excluded Negroes from the use and enjoyment of said city owned,

maintained and operated outdoor swimming pools, solely on account of their race and color; that said outdoor swimming pools are and have for years past been operated exclusively for races other than members of the Negro race."

But plead as justification: "that the custom and usage whereby members of the Negro race and the members of the white race are not permitted to use the same swimming pools is a custom and usage of long standing in the City of St. Louis; that in the year 1950 the Mullanphy pool, formerly used by members of the white race only, has been opened to members of both the white and the Negro race; that the defendant City and its officers plan to make the Vashon pool open to members of both races during the present out-door swimming season, and that the present policy of the City of St. Louis is to extend the use of non-segregated recreational facilities, including swimming pools, as expeditiously as public feeling will permit such extension; that such extension made in the manner planned will bring about a more harmonious relationship between the two races, and will tend to prevent interracial friction, and is a necessary and orderly method, bringing about an eventual condition of non-segregated use of all facilities and a proper and prudent exercise of police power by the defendant City and its officers."

As a proposition of law defendants present a new and novel theory. While it may comport with defendants' extra-judicial ideas of the proper and most expeditious manner of handling the problem which has presented itself, it finds no support in law.

██ It is clear from this record plaintiffs, and others in like situation in the City of St. Louis, have been deprived of their rights under the Fourteenth Amendment by defendants' action in barring them from open-air swimming pools in the City of St. Louis, built, maintained and operated from funds derived from taxes levied on all citizens regardless of race, solely because of plaintiffs' color. Defendants' conduct in this respect seems to have been recognized as early as 1949. In ordering all City operated open-air pools closed in 1949, following peace disturbances, the Mayor of the City of St. Louis made a public announcement containing this sentence: "Mr. O'Toole is on sound legal ground in stating that their is no authority either in state law or city ordinance which would deny any citizen the right to use publicly supported facilities".

By the case of Gibson v. State of Mississippi, 162 U.S. 565, 16 S.Ct. 904, 40 L. Ed. 1075, it was declared by the Supreme Court, as early as 1896: "All citizens are equal before the law. The guaranties of life, liberty, and property are for all persons within the jurisdiction of the United States, or of any state, without discrimination against any because of their race. Those guaranties, when their violation is properly presented in the regular course of proceedings, must be enforced in the courts, both of the nation and of the state, without reference to consideration based upon race." 162 U.S. loc. cit. 591, 16 S. Ct. loc. cit. 910.

Under the record in this case there is racial discrimination by the defendants in their official capacity against the plaintiffs and members of plaintiffs' race, solely because of color, in the use of open-air swimming pools provided by public funds. This conclusion we do not understand the defendants to deny. Defendants would delay the granting of equal rights to plaintiffs, as guaranteed by the Constitution, to some unannounced date, apparently to be determined by the Council of Human Relations. The law permits of no such delay in the protection of plaintiffs' constitutional rights. The decisive question is not what kind of open-air swimming pools will be provided plaintiffs and members of the race to which plaintiffs belong, in the future, but what are now provided by public funds for members of the white race and denied to members of plaintiffs' race solely because of their color.

██ The public policy of separation of the races in the use and enjoyment of open-air swimming pools in the City of St. Louis must rest, if a legal basis is to be

found, solely on equality in fact of privileges.[1] However proper defendants and members of the Council of Human Relations may consider the course laid down for future elimination of racial discrimination, if it does violence to equality in treatment of the races, it cannot override the law on the subject. We do not mean to hold there is any duty on the defendants to furnish plaintiffs, or the members of any race, with open-air swimming pools, but when they do provide such recreational facilities out of public funds, their use must be on a basis of racial equality.

The completion by defendants at some future date, and restriction to use of members of plaintiffs' race, of an open-air swimming pool in some other part of the City, is no answer to plaintiffs' present claim of their constitutional rights. Even when completed such a pool may mitigate discrimination, but it will not validate it as to other sections of the City.

Defendant City is an arm of the State; personal defendants are its officers. Plaintiffs' constitutional rights are personal ones. Plaintiffs are entitled to redress of the denial of their constitutional rights now.

### III.

Plaintiffs have shown no pecuniary loss to support claims set forth in Count I of the complaint.

1. The Gaines case (State of Missouri ex rel. Gaines v. Canada), 305 U.S. 337, 59 S.Ct. 232, 237, 83 L.Ed. 208, has been recognized as stating the law on discrimination by separation of the races in the use of public institution. There the Court held:

"It was as an individual that he was entitled to the equal protection of the laws, and the State was bound to furnish him within its borders facilities for legal education substantially equal to those which the State there afforded for persons of the white race, whether or not other negroes sought the same opportunity."

What are "substantially equal" facilities? In the Gaines case it referred to a legal education. The Gaines case did not define the terms by a discussion of particular physical facilities because the questions presented did not call for it. But in the case of McLaurin v. Oklahoma State Regents, 1950, 339 U.S. 637, 70 S.Ct. 851, 853, the subject was for ruling. As we read the McLaurin case the meaning of "substantial" has been narrowed to a very fine line. Petitioner in the McLaurin case was given a seat in the same classroom with all other students and heard the same professors lecture, had use of the same library and ate at the same cafeteria, but because he was required to sit in the classroom in a row reserved for "colored students", use an assigned table in the library and cafeteria, it was held these "state imposed restrictions which produce * * * inequalities cannot be sustained". Regulations that have for their purpose and do separate the races in use of tax-provided public institutions can no longer be sustained if they produce inequalities. To put it in the affirmative, equality of the races means equality in fact and not in theory. For swimming pool cases see Lopez v. Seccombe, D. C., 71 F.Supp. 769; Lawrence v. Hancock, D. C., 76 F.Supp. 1004. For a golf course case see Law v. City of Baltimore, D. C., 78 F.Supp. 346. In the latter case there is comment, 78 F.Supp. loc. cit., that may become relevant to the situation of the defendants:

"The result of this case may probably create a difficult problem for the Board of Recreation and Parks. It is not the duty nor the function of the court, but is the primary province of the Board, to determine what shall be done in the future in order to afford equal benefits to Negro golfers on municipal golf courses in Baltimore City. The court cannot undertake to adjudicate possibilities in advance of actualities. Possibly the Board may find a fair solution for the future in continuing to reserve Carroll Park exclusively for Negro golfers, but also affording them the opportunity to play at Mt. Pleasant or other municipal courses during certain hours of the day or on one or more days of the week reserved for them exclusively. And if this should be the course found practicable and desirable, it would seem relevant for the Board to consider for that purpose in apportioning time, the presently relatively small number of Negro golfers."

We are not in agreement with the Law case that a division of use based on an estimated or actual census proportion will meet the constitutional test, in light of the reasoning of the McLaurin case.

## Judgment

This cause coming on for hearing and defendants having filed their answer to the amended complaint, plaintiffs and defendants appearing by counsel and answering ready for trial, and defendants in open court waiving time for pleading and consenting that the cause may now be heard on its merits as to the relief sought in the amended complaint, including a plea for a final and permanent injunction, and no jury having been requested, and evidence having been offered, arguments of counsel heard, and the Court being now fully advised, doth order, adjudge and decree:—

 1. That the adoption and enforcement of restrictions on the use of open-air swimming pools, constructed, maintained and operated at the expense of the defendant City, by the defendant City and individual defendants acting in their official capacity, resulting in plaintiffs and others of the Negro race being barred from admittance to and use of such outdoor swimming pools solely because of their race, deprives plaintiffs and others similarly situated of their right to equal protection of laws under the Fourteenth Amendment to the Constitution of the United States, and violates the Civil Rights statute, 8 U.S.C.A. § 43.

2. That defendants, and each of them, their agents, servants and employees, commencing on the 19th day of July, 1950, at 6:00 o'clock A.M., are enjoined and restrained and ordered to cease and desist from depriving plaintiffs and others of the Negro race, solely because of their race, from admittance to and use of the open-air swimming pools in the City of St. Louis which are operated and maintained at the expense of the City of St. Louis, for a period and so long as such recreational facilities are being furnished to any other race or citizen of the City of St. Louis.

3. That defendants, while such swimming pools are being so operated and maintained as above set forth, will permit use of them by plaintiffs and members of plaintiffs' race, on a basis of racial equality, in that no rule or regulation shall be made applicable to members of the Negro race that is not equally applicable to members of all other races using the open-air pools.

4. That Count I of plaintiffs' complaint is dismissed.

5. Defendants' motion to dismiss is overruled.

A copy of this order shall be forthwith served on each of the defendants herein.

The costs of this cause are taxed against the defendants.