Harvey B. GANTT, a minor, by his father and next friend, Christopher Gantt, Appellant,

v.

The CLEMSON AGRICULTURAL COLLEGE OF SOUTH CAROLINA, a public body corporate, R. M. Cooper, President of the Board of Trustees of The Clemson Agricultural College of South Carolina, Edgar A. Brown, et al., Members of the Board of Trustees, etc., Appellees.

No. 8871.

United States Court of Appeals Fourth Circuit.

Argued Jan. 9, 1963.

Decided Jan. 16, 1963.

Certiorari Denied Oct. 14, 1963.
See 84 S.Ct. 46.

612

Matthew J. Perry, Columbia, S. C., and Constance Baker Motley, New York City (Jack Greenberg, New York City, Lincoln C. Jenkins, Jr., Columbia, S. C., Donald James Sampson, Willie T. Smith, Jr., Greenville, S. C., and Derrick Bell, New York City, on brief), for appellant.

William L. Watkins (Watkins, Vandiver, Freeman & Kirven, Anderson, S. C., and P. H. McEachin, Florence, S. C., on brief), for appellees.

Before SOBELOFF, Chief Judge, and SOPER and HAYNSWORTH, Circuit Judges.

PER CURIAM.

Harvey B. Gantt, a nineteen-year-old Negro resident of Charleston, South Carolina, is presently enrolled as a student in the Architectural School of Iowa State University. Since January, 1961, he has been seeking, without success, admission to Clemson College, the only institution in his native state that offers architectural courses.

In October 1962, we heard his appeal from the District Court's denial of an interlocutory injunction and an order admitting him to Clemson College. We declined to grant the desired relief at that stage of the proceedings, but, with the cooperation of the parties, the case was advanced and heard on the merits in the District Court and expedited on appeal when that court dismissed Gantt's complaint.

Gantt first applied for admission to Clemson College in January 1961. The incomplete application was first denied upon the ground that it appeared that he was doing satisfactory work at Iowa State University which he was attending. Renewed, it was again cancelled on August 31, 1961 for the reason that his College Board Test scores, received the preceding day, were received too late to permit consideration of his application. He did not take the examination until August, though one had been given in Charleston, where he lived, in late June 1961. On August 31, 1961 some fifty transfer applications were cancelled for similar reasons. Under the circumstances, the finding of the District Court that the August 31, 1961 cancellation of Gantt's application was not discriminatory is supported by substantial evidence.

Thereafter Gantt reapplied for admission to Clemson College for the 1962–63 session. That application was formally completed in June 1962 when the transcript of his credits earned at Iowa State

for the Spring Quarter of 1962 was received by Clemson College. Though not a formal catalog requirement, however, the evidence indicates that in the School of Architecture at Clemson College the accent is upon original design work, and the Dean of that School routinely requires of transfer applicants submission of examples of their design work and a personal interview. The Dean wrote to Gantt asking that he submit a portfolio of his drawings for evaluation and that he come to Clemson for an interview with the Dean. When Gantt received this communication, however, he had already verified the complaint in this action and had authorized his attorney to file it. After this action had been filed, he responded to the Dean's letter, expressing a willingness to comply with the Dean's request, but, inquiring whether the Dean wished him to do so, in light of the fact that the action had been commenced. The Attorney for the College responded to Gantt's Attorney that he felt any further communication should be between counsel for the parties and not between the parties themselves.

■ The District Court, in its findings of fact, declared that the legislative policy of South Carolina does not prohibit, but discourages, integration of the races in its states-supported colleges. The distinction drawn between prohibition and discouragement is a novel one in legal literature, and we must hold it unacceptable. Under the Constitution of the United States a state may no more pursue a policy of discouraging and impeding admission to its educational institutions on the ground of race than it may maintain a policy of strictly prohibiting admissions on account of race.

The record shows that Clemson College, since the decision of Brown v. Board of Education, 347 U.S. 483, 74 S.Ct. 686, 98 L.Ed. 873 (1954), has not done anything to change the pre-existing policy of exclusion of Negroes as theretofore commanded by state statutes which that decision invalidated. The only state-supported institution of higher learning for Negroes is maintained by South Carolina

at Orangeburg. The State has continued as theretofore its policy and practice of offering financial assistance to Negro students to help pay for their education in out-of-state institutions of learning, if the courses they desire to take are not offered at Orangeburg, but they have not been admitted to other state institutions in South Carolina. Since no architectural courses are available at Orangeburg, Gantt has been receiving, in accordance with the prevailing practice, financial assistance from the State as a student of architecture at Iowa State University.

■ To require a Negro in all respects eligible for admission to a college maintained by the state to forego attendance there and to attend an out-of-state college, even with a state subvention, is not a satisfaction of his constitutional right to equal treatment without regard to race. It is not even compliance with the pre-existing separate but equal rule antedating Brown v. Board of Education. University of Maryland v. Murray, 169 Md. 478, 182 A. 590, 103 A.L.R. 706 (1936); Missouri ex rel. Gaines v. Canada, 305 U.S. 337, 59 S.Ct. 232, 83 L.Ed. 208 (1938).

■ There is no suggestion in the record that Gantt fails to meet the scholastic requirements entitling him to transfer to Clemson College. He has undergone the customary college admission tests. He has submitted to Clemson's authorities, and they have declared satisfactory, his record of studies at Iowa State University. Indeed, as noted, the reason given by Clemson's admissions officer for rejecting Gantt's initial application in early 1961 was that he was getting along satisfactorily at Iowa State University. He has also furnished the required certificate that he is in good standing at Iowa. The only failure attributed to him is that he has not submitted a portfolio of design work done by him at Iowa State University. However, there is a clear explanation for this failure. Finding himself, after eighteen months of effort, still unable to obtain admission to Clemson, Gantt instituted his

action in the District Court. In response to a direct inquiry, the admissions officer declined, for that avowed reason, Gantt's offer to submit the portfolio, and Gantt was told that all further communication should be between the attorneys. In the circumstances, his failure to submit the portfolio may not be relied on by the College. A person may not be penalized with forfeiture of his constitutional rights for asserting them in court.

■ Clemson's request that Gantt submit examples of his work in architectural design and come to Clemson for a personal interview with the Dean of the Architectural School were not unreasonable. As the Dean stated in his letter to Gantt, however, those requirements go principally to an evaluation of the previous work of the applicant, the credit he is to receive for his previous work and a determination, with respect to original design work, of the class within which he should be placed in Clemson. Such evaluation of his proficiency and achievement in design appears more closely related to his placement after admission than to his eligibility for admission.

It thus appears that the District Court was technically correct in holding that, at the time this action was commenced, Gantt's application had not been denied. It was being considered, but it had not been acted upon either way.

■ It may also be true that ordinarily the officials of a college ought to be allowed to pass upon applications free of the coercive effect of a pending action against them, but though the officials of Clemson College may have intended to pass upon Gantt's application on a fair and nondiscriminatory basis, it should have been readily understandable by them that Gantt, with reason, may not have thought so. In the light of the State's policy of discouragement of such transfers, as found by the District Judge, and in the absence of any assurance whatever by officials of the College, though they do not question Gantt's qualifica-

tions for admission, Gantt had justifiable reason to believe that, without legal proceedings in aid of his application, his effort to gain a transfer to Clemson College would be unavailing.

Under all of these circumstances, the College should not have shut off Gantt's effort to comply with the request of the Dean of the School of Architecture for the submission of examples of his design work, nor should it be allowed to justify its failure to grant the application because of Gantt's failure to submit drawings which the College refused to receive, or because of his effort to enforce his constitutional rights.

For the foregoing reasons, Gantt's admission to Clemson College, commencing with the opening of the next semester, will be ordered, for his qualification for admission is unquestioned. The injunctive order will require only that he be treated as any other transfer student.

■ Failure to rule that this was a class action and to grant appropriate injunctive relief was also error. Frasier v. Board of Trustees of University of North Carolina, 134 F.Supp. 589 (M.D. N.C.1955), affirmed 350 U.S. 979, 76 S.Ct. 467, 100 L.Ed. 848; Williams v. Kansas City, 104 F.Supp. 848 (W.D.Mo.1962), affirmed 205 F.2d 47 (8th Cir. 1953), cert. den. 346 U.S. 826, 74 S.Ct. 45, 98 L.Ed. 351; Brunson v. Board of Trustees, Clarendon County School Dist. No. 1, 311 F.2d 107 (4th Cir. 1962). The action was brought by the plaintiff not only for his own benefit, but on behalf of other Negro citizens of South Carolina similarly situated. This procedure is entirely proper under Rule 23(a) (3) of the Federal Rules of Civil Procedure. Other Negroes have in the past sought admission to Clemson, and doubtless there are other qualified Negroes who will do so. These, as well as Gantt, are entitled to freedom from racially discriminatory policy.

Accordingly, the issuance of an injunction will be ordered.

Reversed and remanded.