No. 33,151

D. E. KERN, *Plaintiff*, v. THE CITY COMMISSIONERS OF THE CITY OF NEWTON (McCULLEY ASHLOCK, Mayor, CLAY HAYMAN, L. J. NELSON, KNOWLAND K. BRODE, City Manager, and HAROLD HUNT), *Defendants.*

(100 P. 2d 709)

Opinion filed April 6, 1940.

*Elisha Scott,* of Topeka, for the plaintiff.

*Fred Ice,* city attorney, *Ezra Branine, Alden E. Branine* and *Vernon A. Stroberg,* all of Newton, for the defendants.

The opinion of the court was delivered by

SMITH, J.: This is an original proceeding in mandamus whereby the plaintiff, a young citizen of African descent, seeks to compel the governing officials of the city of Newton and one Harold Hunt to admit him to the privileges of a swimming pool constructed with funds procured by a sale of municipal bonds voted by the electors of Newton in 1934.

This action was before this court once before. (See *Kern v. Newton City Commissioners,* 147 Kan. 471, 77 P. 2d 954.) In that action an alternative writ was issued, which counsel moved to quash on two grounds—that plaintiff had no legal capacity to maintain

the action and that the application for the writ did not state sufficient facts to constitute a cause of action. The motion to quash was overruled and defendants were given thirty days to plead. In that case the plaintiff sought to litigate the right of himself and other members of his race to use the pool. With reference to this contention, this court said:

"According to the petition, however, it is alleged that all colored citizens of Newton are similarly deprived of the privileges of the swimming pool. Whether their number be many or few the pleadings do not show. However, the situation stated in the application for the writ would undoubtedly warrant the institution of some sort of action, mandamus, quo warranto, or injunction, by the public prosecutor; and we are not prepared to say that plaintiff can maintain this action on behalf of the group for which he pleads. But we think it clear that in the interests of justice and equity plaintiff is entitled to maintain the action in his own behalf." (p. 480.)

Following that statement we now have the sole question of whether on the face of the pleadings plaintiff himself is entitled to use the swimming pool. The application for the writ sufficiently alleged that the bonds so voted were a charge upon all taxable property of the city, and that plaintiff was a taxpayer; that when the swimming pool was completed and opened this plaintiff provided himself with a bathing suit for the purpose of enjoying the privilege of the swimming pool, but in the meantime the city government leased the swimming pool to one Harold Hunt; and that the latter denied to plaintiff the right and privilege of using the pool because of his race and color. The petitioner further alleged that no arrangements had been made by defendants to furnish swimming facilities or privileges for plaintiff, and that neither he nor other citizens of African descent and color were admitted to the municipal swimming pool at any time. The petition continued:

"Plaintiff alleges that the action on the part of all the defendants and each of them was malicious, capricious, arbitrary and in violation of the civil rights law of the state of Kansas made and provided in such cases, and also in direct violation of the federal and state constitutions in such cases made and provided. And, that he and all other people of African descent or color are discriminated against because of their race, and that the said defendants and each of them have arbitrarily and intentionally failed and refused to make any provision for their entertainment, amusement or enjoyment of said municipal swimming pool in the city of Newton, Kan., notwithstanding the fact that the plaintiff and people of this group pay their just proportion of the taxes, which will be applied to the liquidation of the indebtedness incurred by the defendants."

The petition concluded with a prayer for an alternative writ commanding defendants to admit plaintiff and other citizens of Newton of African descent and color to the privileges of the swimming pool, or to show cause why plaintiff and others similarly situated should be denied such privileges.

The answer of the city officials was first a general denial. The answer then admitted the official capacity of the defendant officials and that bonds were voted to build a swimming pool. The answer then alleged that the defendants did not know except by hearsay whether or not plaintiff presented himself during the first part of June, 1936, and demanded admittance to the pool, and the defendants specifically denied such fact. The answer further alleged that the city had entered into a written lease with Harold Hunt whereby he leased the pool; that the rental Hunt had agreed to pay would be more than sufficient to pay the expenses of the pool and the cost of construction of it; that Hunt was not an officer or agent of the city of Newton at the time plaintiff demanded admittance and the city of Newton was not responsible therefor. The answer further alleged that plaintiff had an adequate remedy at law and that on account of these facts there was a misjoinder of parties defendant. The answer further alleged that a resolution had been passed by the governing body of the city providing for the construction of a modern swimming pool for colored persons, upon obtaining the necessary funds therefor, which when constructed would have all the necessary equipment for the operation of such a pool, and would be of such size and dimensions to furnish colored persons facilities for swimming; that on May 3, 1938, the governing body adopted an ordinance segregating the different races using the swimming pool for colored people, and the defendants asked a determination of the validity of the ordinance, which was attached to the answer; that after the enactment of the above-mentioned ordinance a lease was duly entered into with Harold Hunt by the governing body and that Harold Hunt was in control of the swimming pool under the terms of that lease. The prayer of the answer was that a peremptory writ of mandamus be not issued and there be a determination of the right of the governing body of the city to segregate the races for swimming purposes.

The answer of Harold Hunt was first a general denial. It then alleged that he had entered into the lease with the city for the swimming pool; that it was a valid lease and that he was not an

official or an employee of the city of Newton and that the pool was leased by him for profit. The answer then contained the following allegation:

"That said swimming pool is what is known as the circulatory type of pool and that the water thereof is only changed once during the swimming season; that the water is constantly entering said pool and leaving the same all of the time the pool is in operation; that if colored persons were permitted to swim in said pool, then the members of the white race would not patronize the same, and that defendant Harold Hunt would suffer damage and the income from said swimming pool would be insufficient to pay the rental thereon."

The answer then alleged that Hunt was not required to obtain a license for the operation of the pool and that plaintiff was not entitled to admission by the provisions of G. S. 1935, 21-2424; that plaintiff had an adequate remedy at law; that Hunt had not neglected the performance of any act which the law enjoined upon him; that plaintiff should be denied a writ of mandamus against Hunt. The answer then alleged that by reason of the above facts there was a misjoinder of parties in the mandamus action. The answer then alleged the adoption of the ordinance providing for the construction of a swimming pool for colored people, the passing of the ordinance providing for a segregation of the races for swimming purposes; that Hunt had entered into a lease with the city for the operation of the swimming pool and that Hunt, as lessee, had the exclusive right of determining the persons who should be admitted to the pool and the times when persons of different ages or classes might swim therein and that he had the right to exclude any person whom he might deem undesirable. The prayer of this answer was that a peremptory writ be denied.

The lease entered into between Hunt and the city, which was attached to the answer of the city, and marked exhibit "A," provided that Hunt would pay the city the sum of $950 for the pool for the term commencing May 29, 1936, to September 15, 1936, and $50 for the use of certain equipment. The lease contained various provisions as to the care of property and the sale of bathing suits and other equipment and operation of the soft-drink stand; the furnishing of water by the city; the hours when the pool should be kept open; the charges that should be made for the use of the pool and equipment; that Hunt would clean and sterilize all suits and towels and operate the pool in accordance with all the rules of the board of health. It also provided that Hunt would maintain proper order and conduct of the patrons of the pool and operate it in a careful

and proper manner and would give his personal time and attention to the operation of it; that he would not sublease it; that he would keep two lifeguards on duty and take all proper precautions for the prevention of accidents and keep the pool lighted. The lease provided that Hunt would save the city harmless from and against all losses, demands, suits, payments, actions, judgments and claims of any and every nature and description brought or recovered against the city by reason of any act or omission of Hunt, and would furnish a liability insurance policy to govern these things; that he would not mar the property, and failure to perform any of these agreements would be grounds to forfeit the lease. The ordinance providing for segregation of the races, which was marked exhibit "B" and attached to the answer of the city, referred to the passage of the resolution providing for the construction of the swimming pool for colored people, and then provided as follows:

"That upon the construction of said swimming pool for colored people, and after the opening thereof, it shall be unlawful for any member of the white or Caucasian race to swim in the pool provided for the colored people, or people of African descent, and it shall likewise be unlawful for any person of the colored race to swim in the present municipal swimming pool situated in the northwest corner of Athletic Park in said city."

Exhibit "C," which is a copy of the contract referred to in the answers, is not set out here because it is in terms substantially the same as exhibit "A."

In due time the plaintiff filed a motion for judgment notwithstanding these answers. In a mandamus case this is equivalent to a demurrer to the defendants' answer on the ground that it does not state any defense to the action. The real question raised by this motion is whether on the face of the pleadings the plaintiff is entitled to a peremptory writ directing the defendants to proceed at once to admit plaintiff to the use of the swimming pool, as prayed for in the petition.

The basis of the relief sought by plaintiff is the rights secured by members of his race by the fourteenth amendment to the constitution of the United States. The first time this amendment was invoked by a member of the colored race in this state seems to have been in *Board of Education v. Tinnon*, 26 Kan. 1. That was a case where the plaintiff, a young colored boy, sought by mandamus to compel the board of education of the city of Ottawa to allow him to attend a public school in that city. The questions dealt with in the opinion were, first, whether the legislature had power to authorize a

board of education to establish separate schools for the education of white and colored children; and second, whether having such power the legislature had exercised it. This court held that the legislature had such power, but that except in the case of cities of the first class it had not exercised it. The peremptory writ was allowed the plaintiff. This case has been followed several times since by this court. The question has been, however, one where school authorities have attempted to exclude a young colored person from attending some particular school. Many of these cases were discussed in *Kern v. Newton City Commissioners,* supra. This court there said:

"But we think it clear that in the interests of justice and equity plaintiff is entitled to maintain the action in his own behalf. He is deprived of the privileges of the swimming pool. He is a taxpayer, and as such he and his property are bound to pay the bonds issued to raise the money which built the swimming pool. He has as good a right to its privileges as any other citizen. Deprivation of the privileges of access to municipal recreation grounds established or maintained at the general taxpayers' expense, on account of race or color, is legally and traditionally offensive to the history of this state; and although this court has repeatedly upheld statutes which sanction reasonable segregation of the racial stocks of this state, white and colored, we have steadfastly held to our oft-repeated rule that the legislature alone can authorize such segregation, as in the many school cases cited above." (p. 480.)

It will be seen that this court placed swimming pools built and maintained in the same category as schools built and maintained by public funds.

The first argument of defendants which we shall consider is that because the city had made a valid lease of the pool and the lessee was not an employee, agent or official of the city and was solely responsible for the management of the pool, mandamus was not a proper remedy to compel admittance of plaintiff. The basis of this argument is that if Hunt prevented the plaintiff from swimming in the pool he was not acting for the city, but in his own individual capacity as lessee of the pool. Defendants cite the case of *Bailey v. City of Topeka,* 97 Kan. 327, 154 Pac. 1014. In that case the city of Topeka had granted to individuals for pay the exclusive right within the park to operate refreshment and lunch stands and to rent boats and provide suits, towels and rooms for bathers, at fixed prices. It was charged that this was a use of the park for other than park purposes and hence beyond the power of the city. This court held that the arrangement was a proper one. Defendants argue that this is a holding that the lease in this case is a law-

ful one and that Hunt, the lessee, is operating the pool under the lease, and the defendant city commissioners owe plaintiff no duty with reference to the pool, and plaintiff's remedy against Hunt is not mandamus, but an action for damages. An examination of *Bailey v. City of Topeka,* supra, discloses that this court held that the arrangement made by .the city in that case was simply the method chosen for the operation of the park rather than to appoint some person or persons to operate it. Nothing was done by the city to take away any of the public features of the park. It was still operated for the benefit of the general public. Following the holding of this court in that case, the lease here between the city and Hunt is nothing more than an arrangement whereby Hunt manages the pool for the city. It would not do to hold that the city officials could evade any of their official obligations or take away from this pool any of its characteristics by entering into a lease with Hunt. Furthermore, when the city leased the pool to Hunt, regardless of the terms written into the lease, it was presumed that the pool would be operated in accordance with all the provisions of the statutes and the constitution. Among these provisions was one that the public generally would be admitted to the pool.

Defendants rely on *Swan v. Riverside Bathing Beach Co.,* 128 Kan. 230, 276 Pac. 796,. as authority that Hunt was operating this pool in his private capacity rather than as an employee of the city. In that case the defendant had leased land from the city and had constructed and was operating a swimming pool on it. It was charged that a child of the plaintiff had met her death while using the pool and that such death resulted from the negligence of defendants. This court held that the immunity of the city from liability for negligence in the performance of its governmental functions was not imputed to one who under the contract in question operated a swimming pool on the land leased from the city so as to relieve him from his negligence. This case would be an authority as to the duty owed by Hunt to members of the public once they are admitted to the pool. The lease in this case provides for that, but it is not an authority on the question of the duty owed by Hunt and the city to permit members of the public to use this pool.

Defendants next cite *Cumming v. Board of Education,* 175 U. S. 528, 44 L. Ed. 262. This was a case where the petitioners were taxed for the maintenance of a high school for white children, but

no similar school was maintained for colored children. The petitioners sought to enjoin the school authorities from operating the high school for white children. The courts of Georgia denied the injunction, and on appeal the United States Supreme Court held that under all the facts and circumstances the petitioners were not entitled to such relief. The case turned upon peculiar circumstances and is not in point on the question we are considering.

The next question argued by defendants has to do with the validity of the ordinance of the city providing for a segregation of races for the purpose of swimming. This ordinance was passed by the city after the resolution providing for a separate swimming pool for colored children had been passed. We are told in the brief for the city and Hunt that the city had not gone ahead with the construction of the separate pool for colored people because until the question of the validity of the segregation ordinance was settled the city authorities could not be sure that the construction of the separate pool would solve the difficulty in which the city found itself. It will be noted that the segregation ordinance provides that it shall not become effective until the separate pool for colored people has been constructed. Should this case be treated as one for a declaratory judgment as far as this question is concerned, the statute providing for such judgments can only be invoked when an actual controversy exists. (See G. S. 1935, 60-3127; also, *Kittredge v. Boyd,* 137 Kan. 241, 20 P. 2d 711; also, *West v. City of Wichita,* 118 Kan. 265, 234 Pac. 978; also, *Garden City News v. Hurst,* 129 Kan. 365, 282 Pac. 720.)

In this case we are considering the right of the plaintiff himself to use the swimming pool now in operation. It does not appear that the plaintiff would object to the segregation ordinance should the city construct a pool for colored people. Hence it cannot be said that an actual controversy exists. Furthermore, the passing of the resolution that is set out in the answer of the city does not assure the construction of the separate pool. Several steps remain to be taken. It might never be built. In view of such a situation it can hardly be said that an actual controversy exists. We refrain, therefore, from passing on the validity of the segregation ordinance in this action.

It will be noted that the city first generally, and second specifically, denied that plaintiff had presented himself and demanded to be admitted to the pool. Hunt denied this in his general denial.

As was stated at the outset of this opinion, the only question plaintiff had any right to litigate is his own right to be admitted to this pool. The question of the right of the colored race in general could only be litigated by the attorney general or the county attorney of Harvey county. The city officials and Hunt are charged with the duty of maintaining order in this pool. It is a peculiar situation, since more or less informality is the rule at such places. Mothers come there with small children and use the place as a playground. On this account there is a wide discretion vested in those in charge of such pools as to whether persons of a quarrelsome disposition or big boys known to be bullies or men or women known to be of immoral character generally should be admitted. This is true regardless of the color or race of the person excluded. As far as this record discloses, neither Hunt nor the city officials have had an opportunity to see plaintiff in this case so as to form a conclusion as to whether he was the sort of person who should be admitted. This court is unable to form such an opinion from this record.

The rule is stated in 38 C. J. 693, section 265, as follows:

"Mandamus will not issue against municipal officers or boards unless it appears that all acts which are conditions precedent to the right to the writ have been complied with. The writ will not issue unless it is made clear that all of the preliminaries preceding the execution of the function sought to be compelled have been completed so that nothing is left for defendant to do except the ministerial duty involved. Nevertheless, a substantial compliance with the conditions precedent will be sufficient."

It can hardly be said that all conditions precedent to the issuance of the writ in this case have been complied with when it is denied that plaintiff ever presented himself at the pool and demanded to be admitted to it.

Therefore, the motion of plaintiff for judgment notwithstanding the answers is denied.