## EASTERLY et al. v. DEMPSTER, Mayor et al.
### No. 1950.

United States District Court
E. D. Tennessee, N. D.
May 5, 1953.

Robertson & Roundtree, Washington, D. C., Acuff & Acuff, Knoxville, Tenn., for plaintiffs.

Clarence Blackburn, John T. Gilbertson and Max Morrison, Knoxville, Tenn., for defendants.

ROBERT L. TAYLOR, District Judge.

Plaintiffs have moved for summary judgment under Rule 56 of the Federal Rules of Civil Procedure, 28 U.S.C.

Plaintiffs, four in number, are members of the Negro race. The jurisdiction of the Court is invoked under Title 8, §§ 41 and 43, U.S.C., R.S.1977 and 1979; the equal protection clause of the Fourteenth Amendment to the Constitution of the United States, and the Declaratory Judgment Act, 28 U.S.C. § 1331.

The defendants are the mayor and members of the city council of the City of Knoxville, Tennessee, with the exception of the defendant Sam Sharp, who is the former manager of the municipal golf course of Knoxville, Tennessee.

The complaint alleges that plaintiffs have made demands upon defendants for use of the golfing facilities at the municipal golf course and that the defendants, on racial grounds, have refused to permit them to use those facilities; that the action of the defendants in such refusal constitutes a denial of equal protection of the laws to plaintiffs and others similarly situated.

The Court is asked to decree, (a) that plaintiffs are entitled to use the facilities of the municipal golf course in the same

manner as white citizens, and (b) that the acts of the defendants in denying the plaintiffs the right to play golf on the municipal golf course constituted a denial of equal protection of the laws in violation of the Fourteenth Amendment.

In Count 2 of the complaint it is alleged that the defendants, despite repeated demands and requests of the plaintiffs, have refused to permit the plaintiffs to play golf on the municipal golf course which is operated by defendants as a public recreational venture and maintained by taxes levied upon and paid by all the citizens of the City of Knoxville.

It is further alleged that the defendants suffered irreparable injury by defendants' refusal to permit them to play golf, as demanded, that they have no adequate remedy at law, and that if defendants are not enjoined from refusing and denying their demands, they will continue to suffer irreparable injury.

It is further alleged that defendants, constituting the mayor and city council of Knoxville, intend to lease the golf course to private persons to be operated as a private course for the sole purpose of defeating and denying the rights of the plaintiffs to utilize the facilities.

It is further alleged that unless the defendants are restrained from disposing of the golf facilities, or ordered to insert into such lease a provision to protect the rights of the plaintiffs and other persons similarly situated, the plaintiffs will lose their constitutional rights and be permanently denied the equal protection of the laws under the applicable provisions of the Constitution.

The Court is asked to enjoin the defendants from denying the plaintiffs free use of the facilities of the golf course and to enter a decree compelling the defendants to permit the plaintiffs to utilize the golf facilities.

Plaintiffs in Count 3 of the complaint seek damages in the amount of $5,000 for alleged deprivation of their civil rights.

The mayor and the members of the city council have filed a joint answer in which they deny that the complaint states a cause of action against them; or that there is any controversy between the defendants and the complainants under the Constitution and the sections of the Code upon which the jurisdiction of the Court is invoked. They assert that if plaintiffs were denied access to the golf course by defendant Sharp, he was not acting under their orders.

The answer further asserts that the golf course was leased to an individual on May 20, 1952, prior to any notice of this suit. They say the lease was made in order to divorce the City of Knoxville from the golf business and aid it to balance its budget. A certified copy of the lease is filed as an exhibit.

Defendant Sam Sharp has filed a separate answer in which he asserts that the complaint fails to state a cause of action against him upon which relief can be granted. In effect his answer adopts all of the defenses made by the other defendants.

A number of interrogatories were propounded to the defendants by the plaintiffs under Rule 33, Federal Rules of Civil Procedure. Answers were made by the defendants to these interrogatories and filed on December 15, 1952.

Oral arguments of counsel for the respective parties were heard on April 15, 1953, and at the conclusion of the arguments ten days were given the parties at their request, in which to submit briefs in support of their respective contentions. Briefs have been submitted and carefully considered.

The original complaint was filed on May 20, 1952. Summonses were issued on the same day and served on some of the defendants on May 21, 1952, and on the remainder of the defendants on May 26, 1952. The summonses that were served on May 21, 1952, were served at 3:50 p. m. and 3:55 p. m.

The answers to the interrogatories and the lease agreement itself show that the lease agreement was executed by the City of Knoxville, lessor, through its mayor and Charles Faust, agent for the Whittle Springs Golf and Social Club, Inc., lessee, on the 21st day of May, 1952. The lease contract shows that the term of the lease

216

is for the period of two years and began on June 1, 1952, and is to end on May 31, 1954, with right of lessee to renew under the same terms and conditions. The consideration for the lease is 10% of gross receipts from the golf course, less federal admission tax, with a minimum guaranteed rental of $3,000 per year. Lessee has the sole and exclusive right to use, and permit others to use, the golf course and appurtenances thereto. The lease does not exclude persons of color from using the golf course.

The answers to the interrogatories show that the defendants, the mayor and council of the City of Knoxville, contemplated leasing the golf course for financial reasons prior to the time any of them were approached by Negro citizens of Knoxville, including plaintiffs, for permission for the members of their race to utilize the municipal golf course facilities.

On March 26, 1952, the mayor discussed with colored citizens the subject of colored citizens playing golf on the municipal course and at that time advised them that he planned to take up the question of leasing the course, with the city council on April 8, 1952. The golf course question was discussed by the council on this date and the mayor advised the council members that he had been approached by Negro citizens desiring to play golf. It was pointed out in this meeting that the deficit showed $26,700 over the previous 4-year period and it was recommended by the director of public welfare that the matter be deferred for two weeks in order for the director to investigate the financial wisdom of leasing or selling the golf course. The matter was again discussed at the meeting on April 22, 1952, including the question of spending $10,000 to build an addition to the club house on the golf course. This matter had been brought to the attention of the council in a previous meeting and it was the opinion of the council that the City of Knoxville should get out of the golf business for financial reasons alone. Following the April 22nd meeting, a group of Negroes visited the mayor's office and demanded his permission to play golf on the municipal course. The mayor then advised them of the financial plight of the city and

pointed out to them that the council would make a decision of the disposition to be made of the course at the next council meeting. In the meeting of May 6, it was decided by the council to discontinue spending city funds on the golf course and, after advertising for bids, to lease it. In the council meeting on May 20, bids for leasing the course were read to the meeting, and after a discussion the council authorized the mayor to enter into the lease which is made an exhibit and previously referred to.

From the foregoing it appears that plaintiffs are asking the Court, (1) to declare that they have a right to use the facilities of the municipal golf course, (2) to order the city officials to permit them to exercise that right, and (3) to award damages against the city officials and Sharp for refusal to permit them to exercise their right. Those demands are still insisted upon, though the city has leased the golf course for a period of two years and is, therefore, no longer operating it for the pleasure and convenience of any of its citizens. The present operator of the golf course is not before the Court and any order that the Court might make curtailing its right in the lease with the City of Knoxville would not be binding upon it. Whether, if the city now operated the course, plaintiffs would have equal rights with other citizens to its use, is not before the Court for decision.

What plaintiffs are asking now is that their rights as to use of the golf course be declared as of the expiration of the above mentioned lease. This the Court cannot do in this procedure for the reason that such declaration of the Court would be in the nature of an advisory opinion. The Court can only pass on a present controversy between adverse parties whose contentions are submitted to the Court for adjudication. Muskrat v. United States, 219 U.S. 346, 31 S.Ct. 250, 55 L.Ed. 246. The City of Knoxville may decide to sell the golf course before the lease expires. It may continue the present lease, under the lessee's option clause. It may, also, decide to enter into a lease of like tenor with a different lessee. If such course should be followed and the Court should undertake

to declare the rights of the parties in the property at the present time, such declaration would have no effect now or at any time in the future.

Plaintiffs, as heretofore noted, filed their complaint May 20, 1952, which was the day before the date of execution of the lease. Plaintiffs have not amended their complaint for the purpose of making the lessee a party defendant. Nor is there any allegation in the pleadings or claim elsewhere in the record that plaintiffs have applied to the lessee for permission to use the golf course since execution of the lease. This deficiency in their position they have sought to supply by invoking the doctrine of lis pendens. However, lis pendens as it might have application here is no more than a form of constructive notice. Without holding that lis pendens is, or is not, applicable so as to bind the lessee to obligations that may have rested upon the city with respect to use of the golf course, it is sufficient answer to note that plaintiffs had actual notice of the city's plan and the steps taken pursuant to that plan to lease the golf course to a private association or individual.

Plaintiffs have submitted a brief in which numerous cases are cited in support of their contentions as heretofore set out. The Court has examined the cited cases, but has not found one that is controlling of this case. Nor has the Court found one that is exactly in point. A number of the cases cited uphold the principle that Negroes are entitled to equal facilities with members of the white race with respect to certain recreational facilities including parks, golf courses, swimming pools and municipal auditoriums. Beal v. Holcombe, 5 Cir., 193 F.2d 384; Harris v. City of Daytona Beach, D. C., 105 F.Supp. 572; Lawrence v. Hancock, D. C., 76 F.Supp. 1004. See also Kern v. City Com'rs of City of Newton, 151 Kan. 565, 100 P.2d 709, 129 A.L.R. 1156.

Plaintiffs in their brief have relied heavily on the case of Lawrence v. Hancock, supra. That case and the one here, however, are distinguishable on the facts. There the Court found that the lease was a device being used to defeat the asserted rights of the Negro plaintiff and that the lessee was merely an agent or instrumentality of the city. Also, in that case the plaintiff alleged that he had made application to the lessee for use of the leased facility and had been denied its use because of his color. In the case here the lease was a bona fide measure adopted by the city to relieve itself of the burden of maintaining a municipal golf course which had proved itself to be profitless and burdensome. Also, the consideration provided for in the lease is a substantial one. The language of the lease is not in itself discriminatory. It provides that the property shall be maintained as a golf course and that the lessee "shall * * * have the sole and exclusive right to use and permit others to use the said golf course and appurtenances connected therewith." Nowhere in the lease does there appear any language that can be construed as intended to deny use of the golf course to members of the Negro race.

As the Court views the situation, no rights of plaintiffs have been violated by the City of Knoxville or by any of the named defendants in the leasing of the property to a private association. It is not claimed that any rights of the plaintiffs here sought to be protected attached to the property itself. Plaintiffs merely complain of discrimination in the enjoyment of the use of the property. Authority is multiplying to the effect that Negroes have a right to the enjoyment of tax-supported institutions equal to those furnished to white citizens. Negatively stated, they have a right not to be discriminated against as to enjoyment of comparable institutions on account of their color. Muir v. Louisville Park Theatrical Ass'n, 6 Cir., 202 F.2d 275; Gray v. Board of Trustees of University of Tennessee, D. C., 100 F.Supp. 113; McSwain v. County Board of Education of Anderson County, D. C., 104 F.Supp. 861.

No case is stated for an award of damages. The record indicates that these plaintiffs appeared at the golf course, demanded permission to use that facility and were denied such permission, but they do not allege that they were denied facilities substantially equal to those furnished white citizens, nor that they made any demand

218

that they be furnished with golfing facilities comparable to those furnished to white citizens. The proof shows that they were informed of the city's intention to discontinue operation of a municipal golf course, that this contemplated course was pursued and that it was done for financial reasons, not to deprive plaintiffs of their rights as citizens.

The decision, accordingly, must be adverse to the plaintiffs. Not only have they failed to make out a case for summary judgment; they have, also, assumed and maintained a position wherein no cause of action exists.

An order will be prepared, therefore, denying the motion for summary judgment and dismissing the complaint.