Jane **ANDERSON**, Douglas Gordon, Bella Halebsky, Phillip Halpern, A. A. Heller, Ted Jacobs, Esther Perry, Kate Pollack, Jennie Ratner; Lillian E. Reiner, Helen Sobell, Rose Sobell and Judy Swetzky, individually on their own behalf; on behalf of all others similarly situated as members of the Committee to Secure Justice for Morton Sobell; and on behalf of such Committee; and Jennie Ratner, as Treasurer of such Committee, on behalf of such Committee and its members, Plaintiffs,

v.

Robert **MOSES**, Commissioner of Parks of the City of New York, Arthur Schleifer, Julius H. Berman, and Tavern-on-the-Green, Inc., Defendants.

United States District Court
S. D. New York.
July 20, 1960.

Nanette Dembitz, Mercedes Hoffmann,. New York City, for plaintiffs.

Charles H. Tenney, Corporation Counsel, New York City, for defendant Robert Moses, Commissioner of Parks, etc..

Schwartz & Nathanson, New York City, George H. Schwartz, Paul E.. Gelbard, New York City, of counsel, for

defendants Arthur Schleifer, Julius H. Berman, and Tavern-on-the-Green, Inc.

FREDERICK van PELT BRYAN, District Judge.

This is an action under the Federal Civil Rights Act of 1871, 42 U.S.C.A. § 1983,[1] for alleged deprivation of rights protected by the Fourteenth Amendment. Defendants have moved for judgment on the pleadings pursuant to Rule 12(a), F.R.C.P. 28 U.S.C., and for summary judgment pursuant to Rule 56, F.R.C.P. Plaintiffs have cross-moved for summary judgment pursuant to Rule 56. These motions are before me for decision.

Plaintiffs are officers and members of the "Committee to Secure Justice for Morton Sobell", a voluntary unincorporated association with its principal place of business in the City and County of New York. In 1951 Morton Sobell was convicted in this court, with Julius and Ethel Rosenberg, of conspiracy to transmit information relating to the national defense to the Soviet Union. See United States v. Rosenberg, 2 Cir., 195 F.2d 583, certiorari denied 344 U.S. 838, 73 S.Ct. 20, 97 L.Ed. 687. The Rosenbergs were sentenced to death and Sobell was sentenced to imprisonment for a term of thirty years. The Committee to Secure Justice for Morton Sobell (The Committee) was organized in 1954 for the purpose of securing Sobell's release from imprisonment. In pursuance of its purposes The Committee has circulated petitions and appeals and held various public meetings to gain support for the release of Sobell, and has also financed various legal proceedings on his behalf.

Defendant Tavern-on-the-Green, Inc. (Tavern) is a New York corporation which operates a public restaurant (The Tavern-on-the-Green) in and on public park property of the City of New York in Central Park under license from the New York City Commissioner of Parks. Defendants Schleifer and Berman are respectively President and Secretary-Treasurer of Tavern and are alleged to control and conduct its operations. Defendant Moses was the Commissioner of Parks of the City of New York who granted the license to Tavern for the restaurant concession in the Park and who was in office at the time the events with which we are concerned here took place.

The present controversy arises out of the cancellation of a dinner sponsored by The Committee which was scheduled for April 21, 1958 at the Tavern-on-the-Green. It appears from the pleadings and from the affidavits submitted on these motions that the dinner was to be held to obtain public support for the appeal for clemency for Sobell, with a speaking program directed to that end. Arrangements had been made between representatives of Tavern, who were fully aware of the purposes of the occasion, and representatives of The Committee for the dinner to be served on that date, which was a Monday, a day on which the Tavern was closed to the general public. The Committee had guaranteed an attendance of 400 and paid $500 to Tavern on account. Invitations had been sent by The Committee announcing the dinner and its purposes and soliciting reservations.

It was apparently the general practice of the Tavern-on-the-Green to serve dinners for organizations devoted to a variety of causes, some charitable, some fraternal and some political, and some espousing various causes at which speeches on topics appropriate to the occasion or cause were customarily made.

On April 10, 1958 a New York City newspaper carried a news story which was highly critical of the Sobell Com-

---

**1.** 42 U.S.C.A. § 1983: "Civil action for deprivation of rights.

"Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress."

mittee and of permitting a dinner for its purposes to be held on City property. Thereafter Tavern states that it received numerous protests against holding the dinner from patrons, from the public generally, and from its own employees and threats of picketing, loss of patronage and possible violence. Tavern says that many of its employees who were necessary to prepare and serve the dinner refused to do so and that it became unable to supply the necessary service. The Tavern officers were concerned that if the dinner were held "picketing would occur, violence and riot might well occur and that people would be hurt and property damaged". On April 13, 1958 Tavern determined to cancel the dinner. After The Committee had refused to cancel voluntarily it notified The Committee by telegram that the dinner was cancelled.

On April 14, after cancellation had been effected, Commissioner Moses, without knowledge that this had been done, wrote to Tavern concerning the dinner as follows:

> "While we cannot order you to cancel this affair we recommend that you do so. This dinner meeting is, in effect, an attack on our courts and system of justice and will be offensive to many citizens, and is not, in our opinion, a proper use of the facilities of the Tavern-on-the Green.
>
> "An outdoor meeting sponsored by this Committee at one of our designated forum areas such as Union Square, will, of course, be permitted under the head of free speech but the Tavern is no place for rallies of this sort."

The dinner was not held and The Committee has been unable to reschedule it for a future date.

2. See Note 1, supra.

3. 28 U.S.C. § 1343: "Civil rights and elective franchise.

"The district courts shall have original jurisdiction of any civil action authorized by law to be commenced by any person:

\*     \*     \*     \*     \*

The complaint contains two counts. In the first plaintiffs allege in substance that the cancellation of the dinner was brought about by the acts of the various defendants acting in concert, or at least in accord, solely because of the unpopularity of the views held by The Committee and its members respecting the conviction and sentence of Sobell. It is asserted that these actions were in essence on behalf of the Municipal Government of the City of New York under color of State and City law. Since the Tavern was customarily used by other organizations concerned with public, social or political issues for the expression of their views, plaintiffs assert that The Committee and its members have been deprived of rights of freedom of speech and freedom of assembly and equal protection of the laws guaranteed to them by the Fourteenth Amendment and in violation of the Federal Civil Rights Act of 1871, 42 U.S.C.A. § 1983.[2]

Plaintiffs seek judgment under the Civil Rights Act and under the Declaratory Judgments Act, 28 U.S.C. § 2201, declaring that defendants have a duty and obligation under the Fourteenth Amendment to permit The Committee and its members to use the Tavern-on-the-Green "without discrimination against the Committee because of its views and their unpopularity", directing the defendants Tavern, Schleifer and Berman to negotiate in good faith with The Committee for a dinner meeting at the Tavern-on-the-Green without such discrimination, and requiring defendant Park Commissioner to direct them to do so. Jurisdiction on the first count is alleged to lie under 28 U.S.C. § 1343(3).[3]

The second count is against defendant Tavern for alleged breach of its agree-

"(3) To redress the deprivation, under color of any State law, statute, ordinance, regulation, custom or usage, of any right, privilege or immunity secured by the Constitution of the United States or by any Act of Congress providing for equal rights of citizens or of all persons within the jurisdiction of the United States."

ment with The Committee for the dinner meeting of April 21, 1958, and seeks money damages for such breach. Jurisdiction over the second count is alleged to be incidental and pendant to jurisdiction over the first count under the Civil Rights Act. See Hurn v. Oursler, 289 U.S. 238, 53 S.Ct. 586, 77 L.Ed. 1148; Bell v. Hood, 327 U.S. 678, 66 S. Ct. 773, 90 L.Ed. 939 (dissenting opinion).

Defendants answered denying in substance that the cancellation of the dinner deprived The Committee and its members of any constitutional rights or that the cancellation was made with any such intent or purpose, and alleging by way of separate defenses lack of jurisdiction of this court over the claims set forth in either of the counts of the complaint.

In view of the rather extensive affidavits which have been submitted by both sides I will consider only the question of whether either party is entitled to summary judgment.

Defendants take the position that the Tavern-on-the-Green is a private enterprise conducting a private business and that its cancellation of the dinner was not action by the State or municipality nor was it done under color of State or City law. They assert that therefore plaintiffs have no claim for violation of the Civil Rights Act and are not entitled to relief from this court. Defendants say further that in any event the dinner was not cancelled because of the unpopularity of the views of The Committee with respect to the conviction and imprisonment of Sobell but for sound and prudent business reasons to protect Tavern's business interests and avoid loss of patronage and damage to its property. Defendants assert that the second count for breach of contract necessarily falls with the first count since the jurisdiction of this court over it is claimed to be pendant only. They urge that there are no issues of fact which require a trial and that they are therefore entitled to summary judgment in their favor.

Plaintiffs, on the other hand, maintain that the undisputed facts show that The Committee and its members were deprived of their constitutional rights of freedom of speech and freedom of assembly and have been denied equal protection of the laws by action taken by governmental authority under the color of State law and that they are entitled to summary judgment granting them redress under the Civil Rights Act.

The first question to be disposed of is whether the dinner was cancelled, as the plaintiffs claim, as a result of action of a State instrumentality acting under color of State law or whether the cancellation was merely the act of private parties.

■■ It has long been settled that the Fourteenth Amendment affords protection against deprivation of civil rights only as against action which can fairly be said to be that of the State or its instrumentalities. The amendment erects no shield against private conduct, however wrongful or discriminatory. The Civil Rights Cases, 109 U.S. 3, 3 S. Ct. 18, 27 L.Ed. 835; Collins v. Hardyman, 341 U.S. 651, 71 S.Ct. 937, 95 L.Ed. 1253. See Dorsey v. Stuyvesant Town Corp., 299 N.Y. 512, 87 N.E.2d 541, certiorari denied 339 U.S. 981, 70 S.Ct. 1019, 94 L.Ed. 1385. Moreover, in order for it to be fairly said that action is that of a State it must be taken by an instrumentality of the State under authority of State law. United States v. Classic, 313 U.S. 299, 61 S.Ct. 1031, 85 L.Ed. 1368; Screws v. United States, 325 U.S. 91, 65 S.Ct. 1031, 89 L.Ed. 1495; Ex parte Virginia, 100 U.S. 339, 25 L.Ed. 676. See Terry v. Adams, 345 U.S. 461, 73 S.Ct. 809, 97 L.Ed. 1152. Suit in the federal courts under the Civil Rights Act for redress against deprivation of constitutional rights can only be maintained if deprivation is the result of such State action. Snowden v. Hughes, 321 U.S. 1, 64 S.Ct. 397, 88 L. Ed. 497, rehearing denied 321 U.S. 804, 64 S.Ct. 778, 88 L.Ed. 1090. Thus, if, as defendants assert, the cancellation of the dinner was the act of a private

enterprise in the pursuance of its private business, the plaintiffs cannot maintain this action regardless of any wrong which may have been done them.

On this issue there are no disputed questions of fact which require a trial and this issue can be decided on the record now before me. The undisputed facts bearing on this issue are as follows:

Central Park, the principal park in the Borough of Manhattan, is public park property owned by the City of New York and held under the New York City Charter for Park Purposes. Section 383 of the New York City Charter provides that the rights of the City to its parks "are hereby declared to be inalienable". The City, however, through its Commissioner of Parks is permitted to grant franchises, permits and licenses with respect to park property but may not grant leases or dispose of any property interest in such inalienable property. See Williams v. Gallatin, 229 N.Y. 248, 128 N.E. 121, 18 A.L.R. 1238; Williams v. Hylan, 1st Dept., 223 App.Div. 48, 227 N.Y.S. 392; Dieppe Corp. v. City of New York, 1st Dept., 246 App.Div. 279, 285 N.Y.S. 468. See, also, Aldrich v. City of New York, 208 Misc. 930, 145 N.Y.S.2d 732.

Under Section 532 of the Charter the Commissioner of Parks is in charge of and responsible for the care and management of the parks and their maintenance, development and improvement in the interests of the public using them.

In 1943 the Commissioner of Parks of the City of New York entered into an agreement in writing with the predecessors in interest of defendant Tavern, granting them a license to operate a public restaurant and incidental parking facilities at the building in Central Park known as the Tavern-on-the-Green. This agreement has been several times modified and extended and has since been assigned with the consent of the Commissioner to defendant Tavern.

The Tavern-on-the-Green building was reconstructed by the City from a much older building on the site known as the sheepfold, in 1934. There have since been numbers of additions and improvements at the expense of the licensee which under the license agreement immediately became the property of the City and for which allowance is made to the licensee from the percentage of gross receipts payable to the City by way of compensation. It is expressly provided that no building, space or equipment is leased to the licensee.

The license agreement recites that "the Commissioner has jurisdiction of parks belonging to the City of New York, and desires for the accommodation of the public to provide restaurant facilities in Central Park, Borough of Manhattan, New York City, and the licensee desires to obtain a permit for the operation of such concession".

The licensee agrees to operate the concession "for the accommodation of the public using the said park, during such times a day and in such manner as the Commissioner reasonably shall prescribe".

Under the terms of the license the Commissioner may regulate the conduct of Tavern concession in meticulous detail. The manager must be satisfactory to the Commissioner and the licensee agrees to replace him or any employee whenever the Commissioner demands. The uniforms to be worn must be of a design approved by the Commissioner. All prices for food or any other articles offered for sale are subject to approval by the Commissioner, and the Commissioner may determine what articles may be sold and direct that others be kept in stock for sale. Delivery of supplies can only be made on days and times of day approved by the Commissioner, and plans, specifications and price of all fixed equipment must be approved by him.

Failure to comply with any provisions of Federal, State or local law, or any rule, regulation or order of the Department of Parks affecting the premises will result in immediate termination of the license unless the licensee complies within forty-eight hours after written

demand. Moreover, "should Commissioner in his sole judgment decide that licensee is not operating the privilege herein granted in a satisfactory manner, the Commissioner may terminate this license by notice in writing immediately effective on mailing." In the event of such termination all rights whatsoever of the licensee are forfeited without compensation. In the event that the licensed premises are required for a paramount park purpose the agreement shall terminate by operation of law.

Thus the enterprise conducted by the defendant Tavern is far from an ordinary private business enterprise as the defendants maintain. It is operated by the concessionaire on public park property for the convenience and comfort of the public using the parks. No property interest in park property has been, or, indeed, could be granted to the concessionaire. The land, buildings and physical facilities are owned by the municipal corporation of the City of New York, an instrumentality of the State of New York deriving its powers and responsibilities solely from the State through its Charter.

The operations of the concessionaire are subject to the most meticulous control by the Commissioner of Parks, a duly constituted officer of the City of New York charged with that responsibility. Any failure to observe the controls provided by the license or to follow any reasonable orders or directions of the Commissioner of Parks with respect to its operations subject the concessionaire to forfeiture of all of its privileges. See Dieppe Corp. v. City of New York, supra. So, too, does any failure to observe the provisions of Federal, State or Municipal law if not promptly corrected. Plainly this is a park facility conducted for the benefit of the public under the public auspices and control of the municipal authorities.

Under these circumstances the acts of defendant Tavern while operating the concession in the park are acts of an instrumentality of the State and come within the ambit of the protections afforded by the Fourteenth Amendment against deprivation of civil rights. The line of authority running from the State to the City, from the City to the Commissioner of Parks, and from the Commissioner of Parks to the concessionaire, is clear. The question is not one of technical law of principal and agent, but, as I have said earlier, whether under all the facts and circumstances the action fairly can be said to be that of a State instrumentality acting under color of State law. The test as to whether redress lies under the Civil Rights Act is whether the party committing the acts complained of should be classified "as 'representatives of the state to such an extent and in such a sense that the great restraints of the Constitution set limits to their action.'" Kerr v. Enoch Pratt Free Library, 4 Cir., 149 F.2d 212, 215, certiorari denied 326 U.S. 721, 66 S.Ct. 26, 90 L.Ed. 427.

Reason, common sense and the decided cases compel the conclusion that the defendant Tavern is such a representative.

Derrington v. Plummer, 5 Cir., 240 F.2d 922, certiorari denied 353 U.S. 924, 77 S.Ct. 680, 1 L.Ed.2d 719, dealt with the refusal to serve a Negro in a cafeteria installed and operated in the basement of a County Court House. In the plans for the erection of a new court house a portion of the basement was set aside and reserved for a cafeteria to be operated primarily for the benefit of persons having business in the court house, but also to be open to the public. The court house, including the cafeteria facilities, was constructed entirely with public funds. On completion of the court house the cafeteria was leased to a private lessee who operated it. Plaintiff, a Negro, was refused service because of his race.

The court held that the lessee was acting as an agent of the State and was subject to the prohibitions of the Fourteenth Amendment. The State could not avoid the constitutional requirement of nondiscrimination by leasing facilities constructed on public property with public funds to a private business.

There are numerous other cases to the same effect. Department of Conservation and Development, etc., v. Tate, 4 Cir., 231 F.2d 615, certiorari denied 352 U.S. 838, 77 S.Ct. 58, 1 L.Ed.2d 56, involved the refusal to permit Negroes to use bathing facilities in a seashore park owned by the State but operated by a lessee. As the opinion of the Court of Appeals stated, the right to use State property without discrimination granted under the Fourteenth Amendment "may not be abridged by the leasing of the parks with ownership retained in the state." [231 F.2d 616.] City of Greensboro v. Simkins, 4 Cir., 246 F.2d 425, dealt with discrimination of the same nature on a golf course constructed by the City on City-owned land but operated by a lessee. Muir v. Louisville Park Theatrical Ass'n, 347 U.S. 971, 74 S.Ct. 783, 98 L.Ed. 1112, related to discrimination by the lessees of an amphitheatre in a City park owned and maintained by the City but leased to a theatrical association. And see, also, Commonwealth of Pennsylvania v. Board of Directors of City Trusts, 353 U.S. 230, 77 S.Ct. 806, 1 L.Ed.2d 792; Kerr v. Enoch Pratt Free Library, supra.

State cases also reach the same result. See Culver v. City of Warren, 84 Ohio App. 373, 83 N.E.2d 82; Kern v. City Commissioners of City of Newton et al., 151 Kan. 565, 100 P.2d 709, 129 A.L.R. 1156; In re Girard College Trusteeship, 391 Pa. 434, 138 A.2d 844, certiorari denied 357 U.S. 570, 78 S.Ct. 1383, 2 L.Ed. 2d 1546, and cf. Wilmington Parking Authority v. Burton, Del., 157 A.2d 894.

The case at bar is even stronger than many of the cases which have been cited. Here there is more than power of ownership in an instrumentality of State government and the power of management in another. The Municipal Government of the City of New York not only owns the facilties where the acts complained of occurred, and holds them in trust for public park purposes, but controls the operations of the concession through its Commissioner of Parks.

■ The Fourteenth Amendment protects against deprivation of the rights of free speech and free assembly and of equal protection of the laws generally, as well as against discrimination because of race or color. Those deprived of such rights are equally entitled to redress under the Civil Rights Act. Hague v. C. I. O., 307 U.S. 496, 59 S.Ct. 954, 83 L.Ed. 1423; Niemotko v. State of Maryland, 340 U.S. 268, 71 S.Ct. 325, 328, 95 L.Ed. 267; Sellers v. Johnson, 8 Cir., 163 F.2d 877; Robeson v. Fanelli, D.C.S.D.N.Y., 94 F.Supp. 62.

The defendants point to facts indicating that the Commissioner of Parks himself did not order the cancellation of the dinner, that the cancellation was made by the Tavern itself in the exercise of its own business discretion and that the comments of the Commissioner, disapproving of the dinner, the day after the cancellation on the grounds that the purposes of The Committee were offensive to many citizens, was a recommendation only and not a direction. They argue from these facts that the action taken was therefore private action not subject to the constitutional restraints of the Fourteenth Amendment.

There is no merit to this contention. Whether or not the cancellation was made without the knowledge or approval of the Park Commissioner, or his subordinates, it is nevertheless State action taken under color of State law subject to Fourteenth Amendment restraints with redress under the Civil Rights Act.

It may be noted that the "recommendation" of Commissioner Moses that the dinner be cancelled on the specific ground that the views of The Committee were offensive to a substantial body of public opinion lends support to the conclusion that the acts of Tavern were acts of the Municipal Government subject to the protections of the Fourteenth Amendment. For it can scarcely be supposed that such a strong recommendation of the Commissioner would be disregarded by a concessionaire operating under a license agreement imposing such stringent controls and holding such

a powerful weapon of forfeiture over its head.

Since the acts complained of by the plaintiffs were taken by the Tavern-on-the-Green as representatives of the State under authority delegated by the State and under color of State law, the plaintiffs are entitled to maintain this action under the Civil Rights Act for alleged deprivation of their rights under the Fourteenth Amendment by reason of such acts, and I so hold. This court has jurisdiction to entertain the action. 28 U.S.C. § 1343(3). Defendants are therefore not entitled to judgment on the first ground raised by their motions.

But this holding by no means disposes of the case. There remains the important, and, indeed, the key question as to whether or not the cancellation of the dinner under all the facts and circumstances in fact deprived the plaintiffs of constitutional rights protected by the Fourteenth Amendment.

On the first branch of the motions now before me the facts are clear and undisputed and the issues presented can be disposed of without trial. This cannot be said of the second branch of the case concerning whether there was actual deprivation of constitutional rights.

The factual picture presented by the record now before me is by no means complete. There are sufficient gaps to indicate that a trial of the issues is highly desirable. All of the facts and circumstances as to such matters, among others, as the negotiations for the dinner, the agreement made, the communications between the Park Department authorities and the representatives of Tavern, the practices of Tavern with respect to holding functions by other organizations and the nature of such functions, the availability of other sites, places or means for carrying out The Committee's purpose, the circumstances which led to the cancellation of the dinner, the availability to Tavern of means and facilities to serve the dinner under the circumstances with adequate protection of person and property, and Tavern's intent and purpose in cancelling the dinner, may bear on the ultimate questions to be determined.

By mentioning these matters I am not attempting to pass in any way on their relevance or materiality in the light of the facts as they may develop. Nor do I attempt to pass on their relative weight and importance. These are matters for the trial judge. I merely point out that a number of them, and perhaps others, require the full exploration with the right of cross-examination on both sides which can only be afforded at a trial.

Moreover, these issues are of considerable public importance and it is particularly desirable to have a full and complete record. See 6 Moore, Federal Practice (2d ed.) ¶ 56.16.

I also leave the issues raised by the defendants with respect to the second count in the complaint for resolution at the trial.

It would serve no good purpose to discuss the facts or the law with respect to the issues left for trial at this time. Any expression of views would be premature and would serve to complicate rather than facilitate the task of the trial judge.

The motions for judgment of both plaintiffs and defendants are therefore denied. The case will proceed to trial on the issues of whether the acts of the defendants have deprived the plaintiffs of rights guaranteed to them by the Fourteenth Amendment to the Constitution and such other issues as have not been resolved by this opinion.

It should be noted, however, that the defendant Moses is no longer Park Commissioner of the City of New York and that his successor has not been substituted for him as a party defendant. This should be done and the new Commissioner's position with respect to the issues made clear before further proceedings are taken.

It is so ordered.